UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GWENDOLYN HILL
    Plaintiff,

v.

                                                      Case No. 09-13562

YPSILANTI HOUSING COMMISSION,      Honorable Patrick J. Duggan
DANIELLE A. BASS-SMITH, ALI A.
SHAKOOR, AND ERIC TEMPLE,

    Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 10, 2010.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Gwendolyn Hill ("Plaintiff") filed this lawsuit in September 2009 alleging violations of her right to due process under 42 U.S.C. § 1983 against the Ypsilanti Housing Commission ("YHC") and its employees Danielle A. Bass-Smith, Ali A. Shakoor, and Eric Temple (collectively "Defendants"). Presently before the Court is a motion for summary judgment filed by Defendants on March 15, 2010. The Motion has been fully briefed and the Court heard oral argument on July 7, 2010.

## I. Facts and Procedural Background

The claims in this lawsuit arise from the termination of Plaintiff's Section 8 housing subsidy assistance benefits by the YHC. Plaintiff leased residential property from

third-party landlords with a lease term starting 10/1/05 and ending 9/30/06. (Defs.' Mot. Ex 1.) Plaintiff's Section 8 housing benefits were paid directly to her landlords in the amount of $638, leaving Plaintiff responsible for a remaining $222 in monthly rent. (Defs.' Mot. Ex 2.)

In July 2006, Plaintiff ceased making her portion of the rent payment. She testified at her deposition in this case that she failed to pay her landlords because her public assistance checks had been stolen. (Hill Dep. at 46-47.) On September 7, 2006, one of Plaintiff's landlords sent a handwritten notice to YHC Section 8 employee, Defendant Bass-Smith, notifying her that Plaintiff was delinquent in her rent and that the lease would not be renewed. (Defs.' Mot. Ex 3.) On September 8, 2006, YHC Section 8 coordinator, Defendant Shakoor, sent Plaintiff a letter advising that the process had begun to terminate her Section 8 benefits due to her failure to pay her portion of the rent. (Defs.' Mot. Ex. 4.) On September 18, 2006, Plaintiff delivered a handwritten note to Bass-Smith requesting an informal hearing regarding the September 8, 2006, Shakoor letter. (Defs.' Mot. Ex. 5.) An informal hearing is for the purpose of allowing a Section 8 recipient to set forth a defense as to why benefits should not be terminated. On September 23, 2006, Shakoor sent Plaintiff a letter advising that her informal hearing had been scheduled for October 27, 2006. (Defs.' Mot. Ex. 6.)

While these matters were developing, Plaintiff contends that she talked to Bass-Smith on the phone in August or September 2006 to request paperwork that would allow her to move to another residence while continuing to receive Section 8 benefits, a process

commonly known as portability. Plaintiff alleges that Bass-Smith responded by informing her that she would not receive this paperwork because she had already been terminated from the Section 8 program. (Aff. Hill ¶ 3.)

In the meantime, Plaintiff's attorney, Douglas Spicer, submitted a letter to Shakoor on September 21, 2006, requesting documents relevant to the proposed termination. (Defs.' Mot. Ex. 7.) Then on September 30, 2006, Spicer sent a second letter to Shakoor indicating his withdrawal as Plaintiff's attorney. (*Id.*) No documents were sent to either Plaintiff or Plaintiff's attorney. (*See* Hill Dep. at 43.) At some point, though, Shakoor allegedly informed Spicer that Plaintiff could "reinstate" her benefits by paying her past due rent.[1] (Hill Dep. at 62.) Plaintiff claims she went to the YHC in October 2006 to inquire about this possibility. (*Id.*) Defendant Temple, YHC's hearings officer, allegedly responded that Plaintiff's benefits could not be reinstated because he had terminated them. (*Id.*)

On October 27, 2006, Spicer appeared for the informal hearing. At that time, he and Plaintiff submitted a signed, hand-written statement stating that Spicer once again represented Plaintiff. (Defs.' Mot. Ex. 7.) Even so, Temple allegedly took issue with Spicer's presence because of the prior withdrawal letter. (Hill Dep. at 41.) After Temple and Spicer exchanged words on the matter, Plaintiff alleges that Temple no longer wanted to proceed with the hearing. (Hill Dep. at 42-45.)

---

[1]Shakoor denied making such a statement. (Hill Dep. at 63.)

In contrast, Temple and Bass-Smith claim that Spicer ended the hearing, not Temple. (Temple Dep. at 16; Bass-Smith Dep. at 15-16.) According to Temple, Spicer stated that he needed more information to proceed, indicated that he would contact Defendants at a later date, and then left with Plaintiff. (Temple Dep. at 16.) Temple and Bass-Smith believed that Spicer would contact the YHC when he was ready to proceed, but this contact never occurred. (*Id.* at 16-17; Bass-Smith Dep. at 16.) Because Spicer never contacted him and no termination hearing was held, Temple never sent a termination letter to Plaintiff. (Temple Dep. at 17.) Instead, Plaintiff's lease ended on September 30, 2006. Defendants claim Plaintiff moved out, thereby ending her Section 8 benefits. (*Id.*)

As previously indicated, Plaintiff filed this lawsuit in September 2009 alleging that the foregoing events violated her Fourteenth Amendment right to procedural due process. In the motion for summary judgment presently before the Court, Defendants argue that Plaintiff's claims fail because the alleged violations were not the proximate cause of damages, because the YHC has no policy or custom of violating federally secured rights, and because Plaintiff cannot establish the elements of a 42 U.S.C. § 1983 claim against the individual defendants who also enjoy qualified immunity.

**II. Standard for Summary Judgment**

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*

**III. Proximate Cause**

Defendants first seek summary judgment on grounds that the alleged procedural due process violations failed to proximately cause actual damages to Plaintiff. More specifically, Defendants assert that Plaintiff's failure to pay rent, which Plaintiff has admitted in this litigation, would have resulted in the termination of Plaintiff's Section 8 benefits regardless of any procedural protections. Plaintiff maintains, however, that Temple would have had discretion to excuse her failure to pay rent on the basis of mitigating circumstances presented at a pre-termination hearing. As such, Plaintiff argues that the termination of Section 8 benefits without a pre-termination hearing was the proximate cause of her loss of benefits. Additionally, Plaintiff asserts that she is entitled to nominal damages for the alleged procedural due process violations even if she fails to establish entitlement to actual damages.

Although "proximate causation is an essential element of a § 1983 claim for damages," *Horn by Parks v. Madison County Fiscal Court,* 22 F.3d 653, 659 (6th Cir. 1994), "the denial of procedural due process [is] actionable for nominal damages without proof of actual injury." *Carey v. Piphus,* 435 U.S. 247, 266, 98 S. Ct. 1042, 1054 (1978); *see also Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1352 (6th Cir. 1992). Because Plaintiff may be entitled to damages for a procedural due process violation regardless of proximate causation as to actual injury, Defendants' motion for summary judgment is denied as to this issue.

**IV. Municipal Liability**

Next, Defendants argue that Plaintiff's claim against the YHC fails because Plaintiff presents no evidence of a YHC policy or custom of violating federally protected rights. Plaintiff counters that her municipal liability claim is supported by the fact that the YHC's authorized decisionmaker, Temple, violated her right to procedural due process.

Although "a municipality cannot be held liable [under 42 U.S.C. § 1983] *solely* because it employs a tortfeasor," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94, 98 S. Ct. 2018, 2035-38 (1978), municipal liability may arise from "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Where a claim is based on the action of an official with final decision-making authority, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82, 106 S. Ct. 1292, 1299 (1986). Rather, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.*, 475 U.S. at 482-83, 106 S. Ct. at 1299-1300.

In this case, Plaintiff bases her municipal liability claim on the fact that Temple possessed final decision-making authority as to the termination of her Section 8 benefits and that Temple terminated those benefits before conducting a hearing. Plaintiff fails to

7

present, however, evidence that Temple possesses final authority to establish the YHC's policies with respect to the provision of pre-termination hearings to Section 8 recipients. To the contrary, Temple testified at his deposition that he is an Administrative Specialist, serving as the assistant to the executive director in charge of the YHC's administrative staff. (Temple Dep. at 5.) There is no record evidence suggesting that Temple, as an assistant to an executive director, is responsible for establishing final YHC policy. Under such circumstances, holding the YHC liable for Temple's failure to provide a pre-termination hearing would be tantamount to holding the YHC liable on a theory of *respondeat superior*. This is impermissible under 42 U.S.C. § 1983. *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036. Therefore, Defendants' motion for summary judgment is granted as to the claim against YHC.

**V. Individual Liability**

Finally, Defendants seek summary judgment on grounds that Plaintiff fails to establish 42 U.S.C. § 1983 claims against the individual defendants and, even if she could establish such claims, that the individual defendants are protected from liability by qualified immunity. Defendants' arguments lack merit.

**A. 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the

color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988). The second requirement is not in dispute in this case

As to the first requirement, Defendants argue that Plaintiff has no federally secured right with respect to the Section 8 benefits enforceable through § 1983, or at least that Plaintiff has failed to identify an authoritative case establishing such rights. Plaintiff asserts, however, that she has a constitutional right to procedural due process arising under *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011 (1970). Therein, the Supreme Court held that, "when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process." *Id.*, 397 U.S. at 264, 90 S. Ct. at 1019. Plaintiff maintains that the *Goldberg* holding applies to Section 8 terminations.[2]

Although none of the parties brought it to this Court's attention, the Sixth Circuit has directly addressed not only the due process rights of Section 8 recipients, but the due process rights of Section 8 recipients facing termination for failure to pay rent. In *Davis v. Mansfield Metropolitan Housing Authority*, 751 F.2d 180 (6th Cir. 1984), the Sixth

---

[2] In the briefing on the present motion, Defendants attempt to make a distinction between "denials" and "terminations" and argue that Plaintiff suffered only a "denial." The Court agrees that there is some distinction between these terms: "denial" usually refers to a refusal or rejection while "termination" usually refers to the act of ending something. *See Black's Law Dictionary* (8th ed. 2004). In this case, "termination" seems the more appropriate term given that Plaintiff was already receiving Section 8 benefits at the time the events giving rise to this lawsuit occurred. Additionally, to the extent Defendants intend to argue that Plaintiff was "denied" new benefits after her prior benefits expired, Federal Regulations provide that "termination" may include "refusing to process or provide assistance under portability procedures." 24 C.F.R. § 982.552(a)(3); *see also Davis*, 751 F.2d at 183 (6th Cir. 1984) (observing that refusal to grant recertification to allow a recipient to transfer to a more suitable apartment effectively "terminates" participation in the Section 8 program).

Circuit accepted the housing authority's concession that "sufficient governmental action exists to invoke the constitutional protection of due process and that participation in a public housing program is a property interest protected by due process." *Id.* at 184. The Sixth Circuit found this statement to be "consistent with the rulings of other courts that have considered the issue." *Id.* (listing cases). Based on these constitutional interests, the *Davis* Court held that, "[f]or present participants in the [Section 8] program, . . . due process requires a hearing prior to termination or denial of recertification." *Id.* at 185. These rights specifically apply to "an individual for whom termination from the existing housing program is proposed because of outstanding rent." *Id.* Thus, Plaintiff's claims implicate rights secured by the Constitution that can be enforced through § 1983.

Having been informed of the *Davis* case by the Court at the July 7, 2010, hearing, defense counsel submitted a supplemental brief on July 14, 2010, arguing that *Davis* is not controlling as to the issue presented in this litigation. First, Defendants argue that *Davis* "did not 'hold' that denial of a Section 8 recipient's benefits is protected by due process requirements. Rather, that was not at issue, as the defendants conceded the issue, choosing not to dispute it." (Defs.' Supp. Br. at 2.) While this may be procedurally correct, as noted above, the observation does nothing to discount the Sixth Circuit's ultimate holding that "[f]or present participants in the [Section 8] program, . . . due process requires a hearing prior to termination or denial of recertification." *Davis*, 751 F.2d at 185. To reach such a conclusion, the Sixth Circuit necessarily agreed "that

participation in a public housing program is a property interest protected by due process." *Id.* at 184.

Next Defendants argue that *Davis* has been abrogated by the Supreme Court's holding in *Gonzaga University v. Doe*, 536 U.S. 273, 122 S. Ct. 2268 (2002), and the Sixth Circuit's holding in *Johnson v. City of Detroit*, 446 F.3d 614 (6th Cir. 2006). In *Gonzaga* the Supreme Court set forth the test for identifying federal statutes that contain individual rights enforceable through § 1983. *Gonzaga*, 536 U.S. at 284-26, 122 S. Ct. at 2276-77. In this case, however, Plaintiff does not claim a violation of a federal statutory right; she claims a violation of her federal constitutional right to procedural due process. Section 1983 applies by its terms to constitutional violations and *Gonzaga* does not change that fact.

The Sixth Circuit's decision in *Johnson* is similarly irrelevant. The plaintiff in that case sought to recover under § 1983 based on alleged violations of the Lead-Based Paint Poisoning Prevention Act, the United States Housing Act of 1937, and administrative regulations promulgated pursuant to those statutes. *Johnson*, 446 F.3d at 617. Because the plaintiff sought to enforce rights allegedly created by statute, the Sixth Circuit applied the test set forth by the Supreme Court in *Gonzaga* to determine if those statutes and regulations were, in fact, enforceable through § 1983. *Id.* at 618-22. The *Johnson* opinion does not address an individual's constitutional right to procedural due process in the Section 8 housing context.

Highlighting this distinction between § 1983 claims based on federal statutes or regulations and the constitutional right to procedural due process is *Caswell v. City of Detroit Housing Commission*, 418 F.3d 615 (6th Cir. 2005), a case decided after *Gonzaga* and relied upon by *Johnson*. In *Caswell* the plaintiff alleged § 1983 claims based on both federal regulations and the constitutional right to due process. 418 F.3d at 617. Therein the Sixth Circuit first analyzed, under the *Gonzaga* test, whether the federal regulations gave rise to an individual right enforceable under § 1983. *Id.* at 618-20. After concluding that the regulations failed to give rise to any such right, the court proceeded to analyze the due process claim. *Id.* at 620-21. Importantly, the lack of an individual right under the regulations did not foreclose the possibility of a constitutional due process right in the same context. *See id.* Instead, the plaintiff's § 1983 procedural due process claim failed because the plaintiff received all the process due for the property interest at stake. *Id.* Though it was not in issue in *Caswell*, the court's analysis, like that in *Davis*, necessarily assumes that the plaintiff had a property interest in his housing benefits to which procedural due process rights attached. *See id.* at 621 ("[H]e is unable to point to what additional procedural safeguards should have been provided to better protect his *property interest*." (emphasis added)).

In the end, whether procedural due process rights attach to Section 8 benefits is a different inquiry than whether federal housing statutes create independently enforceable rights. Defendants' supplemental brief does nothing more than conflate these two issues. Because Plaintiff alleges here that Defendants violated her *constitutional* right to due

process rather than a federal *statutory* right to Section 8 benefits, *Gonzaga* and *Johnson* do not apply. Furthermore, *Davis* remains relevant to the extent it establishes that Section 8 participants have a sufficient property interest in their benefits for procedural due process protections to attach. Therefore, Plaintiff has alleged a violation of a right secured by the Constitution and enforceable under § 1983.

As to the actual substance of this claim, viewing the evidence in the light most favorable to Plaintiff, there is sufficient record evidence by which a jury could conclude that Defendants violated Plaintiff's due process rights.[3] Among other things, Plaintiff asserts that Bass-Smith informed her that her benefits had been terminated and refused to

---

[3] In their motion, Defendants concede "[t]here are questions of fact regarding what occurred at the informal hearing on 10/27/06 . . . ." (Defs.' Mot. at 4.) Defendants go on to assert, however, that Plaintiff and her attorney failed to avail themselves of the opportunity for a hearing that the YHC presented. (*Id.*) Plaintiff maintains, though, that Temple was the one who refused to conduct the hearing. (Hill Dep. at 42.) As such, there is a question of fact as to whether Plaintiff failed to avail herself of a valid opportunity for a hearing or Defendants interfered with her rights.

In any event, even if Plaintiff failed to avail herself of the opportunity for a hearing on October 27, 2006, the federal regulations imposed by the Sixth Circuit in *Davis* provide, "If the complainant . . . fails to appear at a scheduled hearing, the hearing officer or hearing panel may make a determination to postpone the hearing for not to exceed five business days or may make a determination that the party has waived his right to a hearing. Both the complainant and the [Public Housing Authority] shall be notified of the determination by the hearing officer or hearing panel . . . ." 24 C.F.R. § 966.56. Additionally, the regulations applicable to Section 8 benefits provide, "Where a hearing for a participant family is required under this section, the [Public Housing Authority] must proceed with the hearing in a reasonably expeditious manner upon the request of the family." 24 C.F.R. § 982.555(d). Therefore it appears to be Defendants' burden to conclude the matter in some manner and provide notice of the same to Plaintiff. In this case, however, Defendants simply allowed the situation to linger without making any determination, leaving Plaintiff without benefits upon the expiration of her lease. (*See* Temple Dep. at 16-17.)

13

provide assistance with portability procedures,[4] (Pl.'s Aff.); that Shakoor failed to provide discovery materials prior to the pre-termination hearing,[5] (*see* Shakoor Dep. at 13); and that Temple refused to conduct a pre-termination hearing, (Hill Dep. at 42-43). Plaintiff further maintains that this conduct culminated in the termination of her Section 8 benefits without a written termination decision.[6] (*See* Temple Dep. at 17.) Therefore, Plaintiff has sufficiently alleged and supported a § 1983 claim to survive the motion for summary judgment as to the individual defendants.

**B. Qualified Immunity**

Even assuming that Plaintiff makes sufficient allegations of a § 1983 claim, the individual defendants argue that they are protected from liability by qualified immunity. As a general matter, "Government officials . . . are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly

---

[4] As indicated in footnote 3, *supra*, 24 C.F.R. § 982.552(a)(3) lists "refusing to process or provide assistance under portability procedures" as a method of termination from the Section 8 program.

[5] The Federal Regulations relevant to Section 8 benefits provide that Plaintiff is entitled to "examine before the [Public Housing Authority] hearing any [Public Housing Authority] documents that are directly relevant to the hearing." 24 C.F.R. § 982.555(e)(2)(I). Meanwhile, the Federal Regulations imposed by the Sixth Circuit in *Davis* provide that Plaintiff shall have "opportunity to examine before the grievance hearing any [Public Housing Authority] documents, including records and regulations, that are directly relevant to the hearing." 24 C.F.R. § 966.56(b)(1).

[6] The Section 8 regulations provide that "[t]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision." 24 C.F.R. § 982.555(e)(6). The regulations imposed by *Davis* provide that "[t]he hearing officer or hearing panel shall prepare a written decision, together with the reasons therefor, within a reasonable time after the hearing." 24 C.F.R. § 966.57(a).

established constitutional rights." *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010). Qualified immunity, however, protects officials only from liability for money damages, not from declaratory or injunctive relief. *Flanager v. Williams*, 241 F.3d 475, 483 (6th Cir. 2001). In this case, Plaintiff requests injunctive relief in the form of a hearing on her Section 8 benefits. (Compl. ¶ 15.) Therefore, Plaintiff's claims are not subject to dismissal on the basis of qualified immunity.

Additionally, to the extent Plaintiff seeks monetary damages, the individual defendants are not entitled to qualified immunity in this case. As discussed above, Plaintiff has sufficiently alleged and supported the existence of a constitutional violation to support a favorable jury verdict on that issue. As to whether the alleged constitutional violations were "clearly established," "the court looks to decisions of the Supreme Court, then to decisions of this court and courts within this circuit, and last to decisions of other circuits." *Knisley v. Pike County Joint Vocational Sch. Dist.*, 604 F.3d 977, 982 (6th Cir. 2010). The inquiry, though, "must be undertaken in consideration of the specific context of the case, not as a broad general proposition." *Jones v. Byrnes*, 585 F.3d 971, 978 (6th Cir. 2009) (internal citations omitted). To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).

As discussed at length above, the constitutional right allegedly violated in this case is clearly established. The Supreme Court first recognized the right of welfare recipients

to a pre-termination hearing in *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011 (1970). Then, in *Davis v. Mansfield Metropolitan Housing Authority*, 751 F.2d 180 (6th Cir. 1984), the Sixth Circuit specifically applied the procedural due process rights described in *Goldberg* to Section 8 recipients facing termination for failure to pay rent. It is difficult to imagine how the right to a pre-termination hearing in this context could be any more clear. Indeed, even the individual defendants in *Davis* were denied the protection of qualified immunity on grounds that, as far back as 1984, the right to a pre-termination hearing in this context was already clearly established. *Davis*, 751 F.2d at 187 ("At the time of the acts on which liability is based, it was established beyond question that at least some type of hearing was necessary before one could be deprived of public assistance that had been awarded because of need. . . . Several federal cases had applied the due process right to deprivations of public housing assistance." (listing cases)). Therefore, Defendants' motion for summary judgment based on the protections of qualified immunity is denied.

## VII. Conclusion

Plaintiff has presented evidence sufficient to create a genuine issue of material fact on which a jury could reasonably find that the individual defendants violated her right to procedural due process. Furthermore, those individual defendants are not protected by qualified immunity in this case. Plaintiff cannot establish a municipal liability claim against the YHC, however, based on an employee's conduct.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART** as to the municipal liability claim against the YHC. The YHC is therefore **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **DENIED IN PART** as to the claims against Temple, Bass-Smith, and Shakoor.

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:
Douglas Spicer, Esq.
2724 Westview Dr.
Mesquite, TX 75150

Paul C. Woods, Jr., Esq.
Matthew A. Brauer, Esq.